UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CLAY WALLACE,                          )
                                       )
                    Plaintiff,         )
                                       )
          v.                           )     No.  4:03CV277 FRB
                                       )
JOHN COTTLE, et al.,                   )
                                       )
                    Defendants.        )

## MEMORANDUM AND ORDER

Presently pending before the Court is defendant Kerry Mills' Motion to Dismiss Plaintiff's Second Amended Complaint or, in the Alternative, Motion for Summary Judgment (filed June 7, 2006/Docket No. 99); and defendants John Cottle, Danny Torres and Lincoln County, Missouri's Amended Motion for Summary Judgment (filed January 31, 2007/Docket No. 120). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

This cause of action arises out of events occurring in Lincoln County, Missouri, on June 13, 2001, relating to the criminal investigation of conduct involving the illegal manufacturing of methamphetamine, and plaintiff Clay Wallace's arrest and subsequent detention resulting therefrom. In his Second Amended Complaint, plaintiff claims that Lincoln County Sheriff Danny Torres, Lieutenant John Cottle, Kerry Mills, and others conspired to fabricate evidence against him to support criminal

charges upon which to arrest him.[1] Plaintiff also claims that such unlawful conduct was caused by and done in accordance with the policies, practices, customs, or usage of defendant Lincoln County, Missouri. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 claiming defendants' conduct violated his constitutional rights as protected by the Fourth, Fifth, Eighth, and Fourteenth Amendments. Plaintiff also seeks redress under 42 U.S.C. § 1985 claiming that defendants conspired to deprive him of his civil rights, and under 42 U.S.C. § 1986 claiming that each defendant failed to prevent the others from engaging in such wrongful conduct. Finally, plaintiff invokes this Court's supplemental jurisdiction and brings various state law claims alleging that defendants' conduct constituted an abuse of process, malicious prosecution, false arrest, false imprisonment, negligent infliction of emotional distress, and violations of the Missouri Constitution.

Defendants now move for summary judgment on plaintiff's claims arguing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law, to which plaintiff has responded. Pursuant to Rule 56(c), Federal Rules of Civil Procedure, a court may grant summary judgment if the information before the court shows that there are no material

---

[1]In his Second Amended Complaint, plaintiff also named Detective Jason Manyx as a defendant and alleged that he participated in the conspiracy. Defendant Manyx was dismissed from this cause without prejudice pursuant to Fed. R. Civ. P. 4(m) for plaintiff's failure to timely effectuate service upon him.

issues of fact in dispute and that the moving party is entitled to judgment as a matter of law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986).  The burden of proof is on the moving party to set forth the basis of its motion, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986).  Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial.  <u>Id.</u>  The non-moving party may not rest upon its pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion.  <u>Celotex</u>, 477 U.S. at 324.

Summary judgment is a harsh remedy and should not be granted unless the movant "has established [its] right to judgment with such clarity as to leave no room for controversy."  <u>New England Mutual Life Ins. Co. v. Null</u>, 554 F.2d 896, 901 (8th Cir. 1977).  The Eighth Circuit has noted, however, that "summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact."  <u>City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc.</u>, 838 F.2d 268, 273 (8th Cir. 1988).

## I. Evidence Before the Court on the Motion

On June 13, 2001, in the Circuit Court of Lincoln County, Missouri, Associate Circuit Judge Dan B. Dildine issued a felony arrest warrant for plaintiff Clay Wallace on a criminal complaint charging plaintiff with Manufacture of a Controlled Substance and Endangering the Welfare of a Child. (Cottle Affid., Exhs. 3, 4.) In support of the complaint and application for warrant, a Probable Cause Statement was submitted by Detective Jason Manyx, an officer with the Lincoln County Sheriff's Department, which recited the following:

a. On June 13, 2001, I was contacted by Deputy Clayton who advised that while conducting patrol in the area of 1578 E. Highway 47, Winfield, Lincoln County, Missouri, he smelled an odor of ether emitting from the residence of 1578 E. Hwy. 47, Winfield, Missouri. A strong odor of ether is conducive to the manufacturing of methamphetamine. Deputy Clayton then moved to a safe location, however maintained surveillance on the residence.

b. Upon notification, I responded to the above location and met with the homeowner who advised that on June 13, 2001 at approximately 2400 hours he was contacted by a female subject identified as "Rita". According to the homeowner "Rita" asked if Clay J. Wallace would come to 1578 E. Highway 47, Winfield, Lincoln County, Missouri, and cook methamphetamine. It should be noted that prior to my arrival, Det. Lt. Cottle advised the homeowner of his constitutional rights per Miranda.

c. Upon request, the homeowner granted "Rita" permission for Clay Wallace to manufacture methamphetamine. Upon granting permission, the homeowner along with "Rita" and a subject identified as "Jason" proceeded to the Clay J. Wallace residence of 242 Oak Bend, Winfield, Lincoln County, Missouri. When later returning to his residence he observed "Rita" and a subject

- 4 -

identified as Mark Williams cooking methamphetamine in the kitchen of 1578 E. Highway 47, Winfield, Lincoln County, Missouri. According to the homeowner he went into his den (computer room) in order to separate himself from involvement. When entering the bedroom, Jason proceeded into the kitchen and began assisting Williams and Rita in the manufacturing process.

d. After approximately 15 minutes, Clay J. Wallace arrived at 1578 E. Highway 47, Winfield, Lincoln County, Missouri, with his young daughter, ["C.L."]. When arriving, Wallace then proceeded into the kitchen and began cooking methamphetamine with "Rita" and Mark Williams.

e. According to the homeowner, the subjects cooked methamphetamine until an airplane was heard flying above the residence. The subjects then halted their operation.

f. In further conversation with the homeowner, it was revealed that Clay J. Wallace left the premises with approximately 1 oz. of finished product. According to the homeowner, Wallace left in a gray car.

g. When requested, the homeowner consented to a search of the residence at 1578 E. Highway 47, Wingfield, Lincoln County, Missouri. At which time, myself, Det. Lt. Cottle, and Det. Lang searched the residence and found the following: lying on the living room couch two 100cc syringes of which one was half filled with a liquid substance that later field tested positive as methamphetamine; two baggies of white powder substance which also field tested positive as methamphetamine; two jars of white chunked powder contained in coffee filters were located in "Jason's" room; and one jar of white powder substance was also located in "Jason's" coat.

h. As assisting Lincoln County Deputy Derreck Darter neared the driveway of 1578 E. Highway 47, Winfield, Lincoln County, Missouri, then turned eastbound onto Highway 47. [sic] According to the deputy, the gray vehicle exited the driveway onto Eastbound Highway 47. Upon observing the said vehicle, the Deputy attempted to catch up with the vehicle and stop it, however was unable to dos o [sic], due to losing sight of the gray car.

i. In conducting an area canvas, Lincoln County Deputy Derreck Darter located a gray car at 268 Oak Bend,

Winfield, Lincoln County, Missouri.  In checking
the hood of the car, the deputy found it to be hot.
The deputy possessed knowledge that Clay J. Wallace
resided at 242 Oak Bend, Winfield, Lincoln County,
Missouri.  Deputy Darter established contact with
Clay J. Wallace, thus verifying his presence at 242
Oak Bend, Winfield, Lincoln County, Missouri.

(Cottle Affid., Exh. 4.)[2]

Defendant Kerry Mills is the "homeowner" to which Detective Manyx

referred in his Probable Cause Statement, and resided at 1578 E.

Highway 47, Lincoln County, Missouri, on June 12 and 13, 2001.

(Cottle Affid., Exh. 5; Wallace Affid., Exh. Tr. 3 at p. 37.)  In

addition to those law enforcement officers identified in Detective

Manyx's Probable Cause Statement, Sergeant Henke and Deputy Etling

of the Lincoln County Sheriff's Department were also present on the

Mills property on June 13, 2001, and participated in the

---

[2]A review of the reports upon which Detective Manyx relied in
making his Probable Cause Statement (see Cottle Affid. at para. 10)
shows that Deputy Clayton noticed the ether smell in the area at
approximately 2:15 a.m. on June 13, 2001; that after initial
investigation, Deputy Clayton contacted Sergeant Henke regarding
the smell at about 2:45 a.m.; that at approximately 3:15 a.m.,
Sergeant Henke requested assistance from Deputy Darter; that while
en route to the area to provide assistance, Deputy Darter observed
a silver-colored vehicle exit from the Mills property, after which
Deputy Darter gave chase in his patrol car; that at approximately
3:25 a.m., Deputy Darter observed the silver-colored vehicle to be
located in a driveway two residences away from plaintiff's
residence, and that investigation of the vehicle showed the engine
compartment hood to still be warm; that Deputy Darter thereafter
made contact with plaintiff at his residence; and that Detective
Manyx was contacted at approximately 3:19 a.m. regarding the
discovery of the methamphetamine production operation at the Mills
property, after which Detective Manyx proceeded to the property to
conduct investigation.  (Cottle Affid., Exh. 5.)

investigation.  (Cottle Affid., Exh. 5.)

Later that same date, June 13, 1001, Detective Manyx and Detective Michael Lang effectuated the arrest of plaintiff at 242 Oak Bend, Winfield, Missouri, upon the warrant issued by Judge Dildine.  (Cottle Affid. at para. 8, Exh. 2.)  Upon being taken into custody, plaintiff was held without bond.  (Richards Affid. at para. 3.)  A preliminary hearing was conducted in the criminal cause of action on July 17, 2001, after which bond was set. Plaintiff thereafter secured his pretrial release after being in custody for eighty-four days.  (Richards Affid. at para. 3; Wallace Affid. at para. 7; Second Amd. Compl. at para. 17.[3])

At the time plaintiff was arrested on June 13, 2001, he had a criminal cause of action pending against him from 1999 in which he was charged in the Circuit Court of Lincoln County with four counts of Distributing a Controlled Substance.  (Richards Affid. at para. 4.)  On or about December 7, 2001, while plaintiff was released on bond in this June 2001 action, plaintiff was charged with Possession of a Controlled Substance and Manufacturing and Distributing a Controlled Substance arising out of an incident which occurred in December 2001.  (Id. at para. 3.)  On March 1, 2002, plaintiff entered into a plea agreement with the State whereby plaintiff agreed to plead guilty to one count of

---

[3]A verified complaint, such as that submitted by plaintiff here, is equivalent to an affidavit for the purposes of summary judgment.  Williams v. Adams, 935 F.2d 960, 961 (8th Cir. 1991).

Distributing a Controlled Substance as charged in 1999, in exchange for the State's dismissal of the three remaining 1999 charges as well as the charges filed in June and December 2001. (<u>Id.</u> at paras. 5, 6.) As a result of the plea agreement, plaintiff was sentenced to a term of thirteen years' imprisonment. (<u>Id.</u> at para. 6.)

At the preliminary hearing on July 17, 2001, Kerry Mills testified as to the events of June 13, 2001. Such testimony was consistent with the statements attributed to him by Detective Manyx in Detective Manyx's Probable Cause Statement of that same date. (Wallace Affid., Exh. Tr. 3 at pp. 36-46, Exh. Tr. 4.) At the hearing, Mills testified that he was interviewed by Detective Manyx at the scene on June 13, 2001 (Wallace Affid., Exh. Tr. 4 at p. 60), and was advised by Detective Cottle that felony charges could be brought against him if he did not cooperate (Wallace Affid., Exh. Tr. 3 at p. 46, Exh. Tr. 4 at p. 47). Mills testified that Detective Cottle fully explained his rights to him after which Mills wrote a statement that, <u>inter alia</u>, implicated plaintiff's involvement in the occurrences of that date. (Wallace Affid., Exh. Tr. 4 at 47; Cottle Affid., Exh. 5, Voluntary Statement.) Mills further testified that he was promised that no charges would be brought against him if he wrote the statement against plaintiff. (Wallace Affid., Exh. Tr. 4 at 47.)

In an affidavit submitted to the Court in response to

defendants' motions for summary judgment, Mark Williams attests that he was present at Kerry Mills' residence during the evening of June 12 through the early morning hours of June 13, 2001, including such time when law enforcement officials arrived at the property and secured the arrests of various participants in the illegal activity, including himself, Mr. Williams.  Mr. Williams further attests that subsequent to his arrest, and upon Detective Cottle's request, he provided Detective Cottle a written statement that placed plaintiff at the Mills residence that night cooking methamphetamine.  (Williams Affid. at paras. 2, 3.)  Mr. Williams further attests that, contrary to his written statement to Detective Cottle, neither plaintiff nor his daughter were present at the Mills residence at the time of the incidents in question. (Id. at para. 4.)  Nothing before the Court shows, however, that prior to the arrest warrant being sought for plaintiff's alleged involvement in the criminal activity of June 13, 2001, Mr. Williams attempted to retract his inculpatory statement against plaintiff or in any other way inform Lincoln County authorities that plaintiff was not at the Mills residence.  Nor does any evidence before the Court show that prior to giving statements to Detectives Cottle and Manyx on June 13, 2001, Mills was instructed and agreed to provide false information regarding plaintiff's alleged involvement in the occurrences of June 13, 2001.

## II.  Discussion

In his Second Amended Complaint, plaintiff alleges that Mills' statements to Detectives Cottle and Manyx regarding plaintiff's involvement in manufacturing methamphetamine on June 13, 2001, were false and that such statements were the result of a plan developed by Detective Manyx and defendants Cottle and Torres to induce Mills to make such false statements in exchange for an agreement not to charge Mills with illegal conduct.  Plaintiff further claims that at the time the warrant was sought for his arrest, defendants had in their possession information from Deputy Darter which placed plaintiff at his residence at the time of the seizure at Mills' property as well as information that the suspect gray vehicle was not plaintiff's, but that defendants deliberately failed to include this information in their reports and unlawfully continued in their pursuit of criminal charges against plaintiff based on knowingly false information.  Plaintiff claims that this conduct and the fabrication of evidence resulted in his arrest without probable cause and false imprisonment in violation of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights.  Plaintiff seeks redress under 42 U.S.C. §§ 1983, 1985 and 1986, as well as under Missouri law.  The Court first turns to those claims over which it has original jurisdiction.

A.    Eighth Amendment Claims

To the extent plaintiff's Second Amended Complaint brings

claims alleging violations of the Eighth Amendment, the claims should be dismissed. The Eighth Amendment "is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions," Whitley v. Albers, 475 U.S. 312, 327 (1986), and is applicable "'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.'" Graham v. Connor, 490 U.S. 386, 398-99 (1989) (quoting Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977)). The undisputed evidence before the Court shows the conduct complained of here occurred prior to plaintiff's arrest and detention and not thereafter. Inasmuch as plaintiff's claims do not involve any post-conviction conduct, the Eighth Amendment is inapplicable. See Rice v. Barnes, 966 F. Supp. 877, 887 n.11 (W.D. Mo. 1997).

B.    Defendant Mills

Plaintiff claims that defendant Mills acted as a confidential informant in providing information to state officers and therefore is liable under 42 U.S.C. § 1983 for the resulting violations of plaintiff's constitutional rights. Plaintiff also claims under 42 U.S.C. § 1985 that defendant Mills conspired with others to deprive plaintiff of his civil rights and is liable to plaintiff under 42 U.S.C. § 1986 for his failure to prevent others from so conspiring. For the following reasons, these claims against defendant Mills must fail.

For liability to attach under 42 U.S.C. § 1983, a

plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. <u>Roe v. Humke</u>, 128 F.3d 1213, 1215 (8th Cir. 1997). To hold a private party liable under § 1983, a plaintiff must establish not only that the private actor caused a deprivation of constitutional rights, but that he willfully participated with state officials and reached a mutual understanding concerning the unlawful objective of a conspiracy. <u>Dossett v. First State Bank</u>, 399 F.3d 940, 951 (8th Cir. 2005) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152 (1970)). To survive summary judgment on a § 1983 claim against a private party defendant, plaintiff "must offer evidence sufficient to support the conclusion that the defendant[] 'directed [himself] toward an unconstitutional action by virtue of a mutual understanding,' and provide facts which would establish a 'meeting of the minds.'" <u>DuBose v. Kelly</u>, 187 F.3d 999, 1003 (8th Cir. 1999) (quoting <u>White v. Walsh</u>, 649 F.2d 560, 561 (8th Cir. 1981)).

The undisputed evidence before the Court shows Mills not to have been a state actor in his provision of information to Detectives Cottle and Manyx on June 13, 2001, and thus cannot be liable under § 1983 for any alleged deprivation of plaintiff's constitutional rights. Plaintiff has presented nothing to the Court to counter defendants' showing that Mills provided

information to Detectives Cottle and Manyx only upon their questioning of him in relation to the discovery of evidence of criminal activity occurring on his property and in his residence. No § 1983 liability attaches to a private actor for merely answering a law enforcement official's questions regarding a case. See Miller v. Compton, 122 F.3d 1094, 1098 (8th Cir. 1997). See also Lane v. Johnson, 385 F. Supp. 2d 1146, 1151 (D. Kan. 2005) ("[A]n individual does not act under color of law merely by reporting an alleged crime to police officers who take action thereon."). To the extent plaintiff appears to allege that defendant Mills willfully participated in the law enforcement officials' "plan" to ensnare plaintiff by agreeing to provide false information as instructed by such officials, plaintiff has provided no evidence other than his bare assertions that law enforcement officers planned to obtain false information from Mills implicating plaintiff in criminal activity. In order to withstand summary judgment, plaintiff "must substantiate his allegations with 'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'" Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting Gregory v. Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)); see also Haas v. Kelly Servs., Inc., 409 F.3d 1030, 1036 (8th Cir. 2005) ("Evidence, not contentions, avoids summary judgment."). "A mere scintilla of evidence is insufficient to

avoid summary judgment." <u>Moody</u>, 23 F.3d at 1412.

The evidence before the Court indisputably shows that Mills voluntarily provided information to law enforcement officers regarding plaintiff's and others' involvement in the incidents of June 13, 2001; that such information as to plaintiff's presence was corroborated in part by Deputy Darter's independent observation of a vehicle leaving the area, that such vehicle fit the description of the vehicle driven by plaintiff to the Mills property that night, that shortly after pursuit of the vehicle Deputy Darter located the vehicle in a driveway which was located two residences from plaintiff's residence, that the hood of the vehicle was warm to Deputy Darter's touch, and that Deputy Darter located plaintiff at his residence upon his discovery of the suspect vehicle (<u>see</u> Cottle Affid., Exh. 5 at pp. 5-6, Supplemental Narrative Report); and that evidence of methamphetamine production was indeed found at and seized from the Mills property. To the extent evidence shows that subsequent to being interviewed by Detective Manyx, Mills was asked by defendant Cottle to reduce his statement to writing and to include therein the information relating to plaintiff Wallace, there is no evidence that Mills agreed to cooperate and provide incriminating information regarding plaintiff until after he had already implicated plaintiff in his oral statements to the officers. <u>Cf.</u> <u>United States v. Darden</u>, 70 F.3d 1507, 1541 (8th Cir. 1995) (in the absence of evidence that government witness

agreed to cooperate with government prior to obtaining incriminating statements from defendant, witness was a private citizen and not a state actor at the time statements were made). In spite of the defendant Cottle's use of promises to persuade Mills to provide a written statement regarding plaintiff's activities as Mills had described them, the facts presented by plaintiff nevertheless do not raise a genuine issue that Mills was intentionally fed evidence by the officers and cooperated with the officers in denying plaintiff his constitutional rights by providing false evidence against him. See <u>Reasonover v. St. Louis County, Mo.</u>, 447 F.3d 569, 582 (8th Cir. 2006).

For all of the foregoing reasons, there simply is no evidence demonstrating that Mills had a "meeting of the minds" with any government official to provide false information against plaintiff such that Mills was transformed into a state actor. Section 1983 liability therefore cannot attach to defendant Mills and he is entitled to summary judgment on such claims. See <u>Miller</u>, 122 F.3d at 1098.

Likewise, because Mills was not a state actor, plaintiff cannot maintain a conspiracy action against him under § 1985 in the absence of evidence that Mills' actions were motivated by class-based animus. <u>Steele v. City of Bemeji</u>, 257 F.3d 902, 905-06 (8th Cir. 2001) (citing <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 268-69 (1993)). No such evidence exists here. Further,

as discussed above, given plaintiff's failure to present specific material facts that Mills formed an agreement with the officers to violate plaintiff's constitutional rights, Mills is entitled to summary judgment on plaintiff's claim that Mills participated in any such unlawful conspiracy. <u>Reasonover</u>, 447 F.3d at 582.

To the extent plaintiff seeks redress from defendant Mills under § 1986 for his failure to prevent others from engaging in a conspiracy against plaintiff, such claim is addressed <u>infra</u> at Section II.E.

## C.   Defendant Sheriff Torres

In his Second Amended Complaint, plaintiff alleges that defendant Sheriff Torres was personally and actively involved in the investigation of criminal activity at the Mills property on June 13, 2001; personally participated in the arrests of the various individuals on the Mills property on June 13, 2001; and personally participated in developing a plan with Detectives Cottle and Manyx to obtain false information from Mills to secure plaintiff's arrest. The evidence produced by defendants, however, shows Sheriff Torres not to have had any personal involvement in, nor any direct responsibility for, the investigation on the Mills property on June 13, 2001, the subsequent arrest of plaintiff, or plaintiff's subsequent detention. (Cottle Affid., Exh. 5.) Plaintiff has presented nothing to the Court to demonstrate otherwise. Because the undisputed facts show that defendant Torres

had no involvement in the unconstitutional conduct as alleged by plaintiff, defendant Torres is entitled to summary judgment on such claims.  See Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007).

To the extent plaintiff seeks to attach supervisory liability to defendant Torres for his alleged failure as sheriff to prevent his subordinates from violating plaintiff's constitutional rights, such claim is addressed infra at Section II.F.

D.    Defendant Detective Cottle

Plaintiff claims that Detective Cottle participated with Detective Manyx and Sheriff Torres in developing a plan to induce Mills to provide false information against plaintiff.  Plaintiff alleges that the purpose of this plan was to implicate plaintiff in the crimes which occurred on Mills' property on June 13, 2001, and thus provide a basis upon which to seek criminal charges against plaintiff.  Plaintiff claims that such conduct resulted in plaintiff's arrest on a warrant issued without probable cause inasmuch as it was issued on knowingly false and misleading statements.  For the following reasons, plaintiff's claims must fail.

As discussed supra, plaintiff has failed to present any evidence to counter defendants' showing that the statements made by Mills to Detectives Manyx and Cottle regarding plaintiff's involvement in the activities of June 13, 2001, were not the

product of any plan to procure false information against plaintiff for the purpose of securing an arrest warrant against him. Defendant Cottle is thus entitled to summary judgment on such claims.  In addition, the evidence before the Court shows it was reasonable for Detective Cottle and other law enforcement officials to rely on the information provided by Mills in securing the arrest warrant for plaintiff.  Finally, a review of the evidence shows there was sufficient probable cause upon which an arrest warrant was sought for plaintiff and for the court's issuance of the warrant.

    1.   *Reliance on Information Provided by Mills*

      Plaintiff claims that Detective Cottle should not have relied on the information provided by Mills and failed to investigate Mills' claims further before seeking criminal charges against plaintiff.

      Detective Cottle's reliance on Mills' statements was reasonable.  First, the statements contain indicia of reliability in that Mills made self-incriminating admissions to Detectives Manyx and Cottle by admitting ownership of the property upon which the illegal activity occurred and his personal knowledge of and participation in such activity.  See <u>United States v. LaMorie</u>, 100 F.3d 547, 553 (8th Cir. 1996).  To the extent plaintiff claims that Mills' statements were not against his penal interest inasmuch as he was promised that he would not be prosecuted, the Eighth Circuit

has found such an argument to be "foreclosed by the relevant case law: 'That the informant may be . . . promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct.'" Id. (quoting United States v. Harris, 403 U.S. 573, 583-84 (1971) (plurality opinion)); see also United States v. Carpenter, 422 F.3d 738, 744 (8th Cir. 2005). In addition, Mills provided detailed firsthand observations of the illegal activity, some of which had been observed by the officers themselves, and plaintiff's involvement therein. "There is an inherent indicia of reliability in the richness and detail of a first hand observation." United States v. Warford, 439 F.3d 836, 841-42 (8th Cir. 2006) (internal quotation marks and citation omitted). Further, nothing before the Court shows that during their interview of Mills, the officers had any reason to question Mills' truthfulness. Cf. United States v. Robertson, 39 F.3d 891, 893 (8th Cir. 1994) (first-hand observation of an informant in a personal meeting gives greater weight to an officer's decision to rely on that information). Contra Mueller v. Tinkham, 162 F.3d 999, 1003 (8th Cir. 1998) (not reasonable for officers to rely on informant's statements given officers' knowledge of conflicting information concerning informant's truthfulness). The officers' determination here to rely on Mills' statements is further strengthened by the independent corroboration of Deputy Darter who 1) observed a vehicle which fit the description of the vehicle

driven by plaintiff leaving the Mills property shortly before the arrival of law enforcement officials, 2) observed no other vehicle to be present on the road at the time, 3) located the suspect vehicle a short time later in the vicinity of plaintiff's residence with the hood to the engine compartment still warm, and 4) located plaintiff in his residence upon the discovery of the suspect vehicle. (Cottle Affid. Exh. 5 at pp. 5-6, Supplemental Narrative Report.) "If some information from an informant is shown to be reliable because of corroboration, it is a permissible inference that other, uncorroborated information is also reliable." <u>LaMorie</u>, 100 F.3d at 53. Mills' statement was further corroborated by the uncontradicted statement given by Mark Williams at the scene that plaintiff was present on the Mills property and engaged in illegal activity. (Williams Affid. at para. 3.)

To the extent plaintiff claims that defendant Cottle should have investigated the substance of Mills' statements before pursuing charges against plaintiff, the undersigned notes that "[a]n officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." <u>United States v. McKay</u>, 431 F.3d 1085, 1090 (8th Cir. 2005) (internal quotation marks and citation omitted). Nothing before the Court shows defendant Cottle to have disregarded any plainly exculpatory evidence, however. Indeed, evidence shows that further

investigation was conducted in this case as demonstrated by Deputy Darter's investigation of the suspect vehicle and its ownership status, as well as his questioning of plaintiff and his companion regarding plaintiff's whereabouts during the relevant time period. Although evidence shows the vehicle in question not to have been registered to plaintiff and that plaintiff stated to Deputy Darter that he was at his own residence at all relevant times (Cottle Affid., Exh. 5 at pp. 5-6, 15; Wallace Affid.), such exculpatory information is not compelling and indeed is overcome by the totality of the circumstances then known to law enforcement linking plaintiff to the occurrences at the Mills property on June 13, 2001. See United States v. McKay, 431 F.3d 1085, 1090-91 (8th Cir. 2005); Olinger v. Larson, 134 F.3d 1362, 1366 (8th Cir. 1998). Plaintiff identifies no other exculpatory evidence nor presents any evidence to the Court to demonstrate that any further investigation would have exonerated plaintiff and thus negated probable cause for arrest. See Kuehl v. Burtis, 173 F.3d 646, 650-51 (8th Cir. 1999). Accordingly, defendant Cottle is entitled to summary judgment on plaintiff's claim that his constitutional rights were violated by Cottle's failure to investigate the substance of Mills' statement before seeking criminal charges against plaintiff. See Brodnicki v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir. 1996) (recognizing that a police officer need not investigate a suspect's alibi and "conduct a mini-trial before arresting [the suspect].").

2. *Probable Cause for Arrest*

The Fourth Amendment provides that no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the person or things to be seized. The probable cause requirement applies both to arrest and search warrants. <u>Wong Sun v. United States</u>, 371 U.S. 471, 482 n.9 (1963). Probable cause to obtain an arrest warrant exists when law enforcement officers have, at the moment of arrest, knowledge of facts and circumstances grounded in reasonably trustworthy information and sufficient in themselves to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested. <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964). Probable cause is a "fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983). "[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." <u>Spinelli v. United States</u>, 393 U.S. 410, 419 (1969). Probable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officers on the scene, provided there is some degree of communication. <u>United States v. Poe</u>, 462 F.3d 997, 1001 (8th Cir. 2006). Probable cause to arrest may arise in whole or in part from

information provided by a confidential informant. <u>Draper v. United States</u>, 358 U.S. 307 (1959); <u>McCray v. Illinois</u>, 386 U.S. 300 (1967).

Here, the officers had information from both Mills and Williams that plaintiff was present and active in the production of methamphetamine, and additional information from Mills that plaintiff left the scene in a gray vehicle shortly before the officers' arrival. Such information was corroborated by the officers' own observations at the scene of materials used for methamphetamine production and use, as well as Deputy Darter's observation of a vehicle – reported to be driven by plaintiff – to leave the Mills property immediately prior to the officers' arrival and locating such vehicle within minutes thereafter in the near vicinity of plaintiff's residence with the engine compartment still warm. All of this provided more than ample probable cause upon which the officers determined to seek an arrest warrant for plaintiff's involvement in the illegal activity on the Mills property on June 13, 2001.

Therefore, for all of the foregoing reasons, defendant Cottle is entitled to judgment as a matter of law on plaintiff's claim that he participated in a plan to obtain false information against plaintiff so that a warrant could be issued for plaintiff's arrest without probable cause.

E.  <u>42 U.S.C. § 1986</u>

Section 1986 of Title 42 of the United States Code provides that

> [e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented[.]

A claim under 42 U.S.C. § 1986 is dependent upon a valid § 1985 claim of conspiracy.  <u>Adams v. Boy Scouts of America-Chickasaw Council</u>, 271 F.3d 769, 774 n.8 (8th Cir. 2001) (citing <u>Lewellen v. Raff</u>, 843 F.2d 1103, 1116 (8th Cir. 1988)).  Because plaintiff's claims under § 1985 fail (<u>see</u> Sections II.B-D, <u>supra</u>), his claim under § 1986 that defendants failed to prevent a violation of § 1985 must likewise fail.

F.  <u>Municipal Liability – Lincoln County and Sheriff Torres</u>

In his Second Amended Complaint, plaintiff contends that the unlawful conduct to which he was subjected was caused by and done in accordance with the policies, practices, customs, or usage of defendant Lincoln County, Missouri, which included the failure of Lincoln County and Sheriff Torres to properly train deputy sheriffs.  In the Eighth Circuit, a party is unable to prevail on

such theories unless an underlying violation of the Constitution is established. Brodnicki, 75 F.3d at 1266 (claims against the city for inadequate training or municipal custom lack merit where police officers did not violate plaintiffs' constitutional rights). Given the Court's disposition of plaintiff's constitutional claims, and specifically, that no constitutional violations occurred in the manner and method by which criminal charges were brought against plaintiff on June 13, 2001, there exists no constitutional injury upon which the plaintiff may premise his claim of municipal and/or supervisory liability. Id.; Neal v. St. Louis County, 52 F. Supp. 2d 1090, 1095-95 (E.D. Mo. 1999), aff'd, 217 F.3d 955 (8th Cir. 2000). Consequently, defendants Lincoln County, Missouri, and Sheriff Torres cannot be liable to plaintiff and are thus entitled to judgment as a matter of law on plaintiff's claims. Brodnicki, 75 F.3d at 1266; Neal, 52 F. Supp. 2d at 1096.

G.    State Law Claims

        Inasmuch as the Court will dismiss all claims over which it has original jurisdiction, the undersigned declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims. 28 U.S.C. § 1367(c)(3); see also Anderson v. Franklin County, Mo., 192 F.3d 1125, 1131 (8th Cir. 1999); American Civil Liberties Union v. City of Florissant, 186 F.3d 1095, 1098-99 (8th Cir. 1999) (when state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment,

state claims are ordinarily dismissed without prejudice); <u>Willman</u> <u>v. Heartland Hosp. East</u>, 34 F.3d 605, 613-14 (8th Cir. 1994) (same), <u>cert. denied</u>, 514 U.S. 1018 (1995).[4]

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant Kerry Mills' Motion to Dismiss Plaintiff's Second Amended Complaint or, in the Alternative, Motion for Summary Judgment (Docket No. 99); and defendants John Cottle, Danny Torres and Lincoln County, Missouri's Amended Motion for Summary Judgment (Docket No. 120) are **GRANTED** to the extent plaintiff seeks relief under 42 U.S.C. §§ 1983, 1985 and 1986 for alleged violations of his constitutional and civil rights.

**IT IS FURTHER ORDERED** that to the extent plaintiff's Second Amended Complaint raises independent and supplemental claims of alleged violations of state law, such claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

Judgment shall be entered accordingly.

_Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of March, 2007.

---

[4]Plaintiff, of course, is free to pursue these claims in an appropriate state court if he so chooses.